# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BITPANDA GMBH, | Case No. |
| Plaintiff, | |
| v. | **COMPLAINT** |
| Bitpanda Inc. and Does 1 Through 10 | |
| Defendants. | |

Plaintiff Bitpanda GmbH ("Bitpanda") alleges as follows, upon actual knowledge with respect to itself and its own acts, and upon information and belief as to all other matters:

## NATURE OF THE ACTION

1.      This is a civil action for a Lanham Act false designation of origin and unfair competition claims under federal law, as well as unfair competition and misuse of name claims under New York state law.

2.      Bitpanda GmbH ("Bitpanda"), a leading crypto assets platform, has used the name and mark BITPANDA (the "BITPANDA Mark") since at least 2014 in Europe.  A household name when it comes to crypto, Bitpanda has developed significant goodwill and recognition for its BITPANDA Mark, including among the relevant consumers in one of the world's leading financial centers—New York.  Recently, Bitpanda discovered that a likely financial scammer "Bitpanda Inc.," along with its unknown John Doe operators and accomplices (collectively "Defendants"), is impersonating Bitpanda in New York for the likely purpose of preying upon unsuspecting consumers.  This action aims to shut down the financial scammers' unlawful impersonation, stop their unlawful use of the identical BITPANDA Mark, and prevent them from exploiting Bitpanda's reputation and goodwill to scam consumers.

## PARTIES AND JURISDICTION

3.      Plaintiff Bitpanda GmbH is an Austrian corporation with its principal place of business at Stella-Klein-Löw Weg 17 1020 Vienna, Austria.

4.      Defendant Bitpanda Inc. is an entity with a purported place of business at 20 W. 34th St., New York, New York.

5.    Defendants John Does 1-10 are Bitpanda Inc.'s unidentified operators and accomplices, who upon information and belief are using Bitpanda Inc. to violate Bitpanda's intellectual property rights and scam consumers.

6.    The Court has jurisdiction over the subject matter of this action pursuant to 15 U.S.C. §§ 1121 and 28 U.S.C. §§ 1331 and 1338(a) and (b).  The Court has supplemental jurisdiction over Bitpanda's state-law claims pursuant to 28 U.S.C. § 1367(a) because they are substantially related to its federal claims and arise out of the same case or controversy.

7.    This Court has personal jurisdiction over Defendants because they have purposefully availed themselves of the privilege of conducting business in New York and are copying the BITPANDA Mark within New York.  Bitpanda Inc. has held itself out as having its place of business in New York and has registered with the Financial Crimes Enforcement Network ("FinCEN") as a Money Services Business ("MSB") in New York, which is a common practice by scammers to bolster their legitimacy in fooling unsuspecting consumers.[1]  Indeed, Defendants' associates have previously used this exact maneuver in executing another scam, creating a fraudulent company that is purportedly based in New York, and citing its MSB registration as proof of its legitimacy.

8.    Venue lies in this District pursuant to 28 U.S.C. § 1391(b) and (c) because a substantial part of the events giving rise to Bitpanda's claims occurred in this District, because Defendants threaten Bitpanda's reputation and goodwill in the District, and because Defendants purports to have their place of business in the District.

---

[1] *See* https://www.fincen.gov/system/files/2024-12/Alert-FinCEN-Scams-FINAL508.pdf.

## BITPANDA AND THE BITPANDA MARK

9.      Bitpanda is one of Europe's leading crypto retail brokers, offering customers safe and convenient trading opportunities through its online platform and mobile app.

10.     Founded in 2014, Bitpanda uses the BITPANDA Mark in association with its safe and convenient online platform and mobile app; in its partnerships with institutional clients; and in offering financial education through its Bitpanda Academy.

11.     Bitpanda is trusted as a trading platform by over seven million consumers around the world and adheres to the highest standards of safety and regulatory compliance.  Although it serves a wide range of customers, Bitpanda is popular among beginners in crypto investment because it offers a simple, user-friendly platform, complemented by market analysis and educational resources.

12.     As a result of Bitpanda's focus on security, regulatory compliance, and the delivery of first-in-class financial services, Bitpanda has developed significant goodwill and a highly-positive reputation with consumers as a safe and reliable trading platform.

13.     Bitpanda owns the following valid and subsisting U.S. trademark registrations, registered under Section 66A of the Lanham Act, in connection with various financial and related services:

| Mark | Registration Status | Date of Registration | Registration Number |
|------|--------|--------|--------|
| bitpanda | Registered | Oct. 04, 2022 | 6861603 |
| BITPANDA CUSTODY | Registered | Mar. 26, 2024 | 7333886 |
| bitpanda Payments | Registered | Jun. 22, 2021 | 6391721 |
| BITPANDA ECOSYSTEM TOKEN | Registered | Sep. 13, 2022 | 6841499 |

14.    Bitpanda's parent Bitpanda Group AG additionally owns the following pending U.S. trademark applications in connection with various financial and related services:

| Mark | Application Date | Serial No. |
|------|--------|--------|
| Bitpanda web3 | Feb. 10, 2025 | 79429737 |
| Bitpanda DeFi Wallet | Mar. 13, 2025 | 79423992 |
| BITPANDA WALLET | Mar. 07, 2025 | 79422452 |

15.    These marks cover goods and services including electronic transfer of virtual currencies, electronic data storage via blockchain, business administration for companies trading

in digital tokens and digital currencies, cryptocurrency and blockchain technology software, provision of an online marketplace for buyers and sellers of goods and services, downloadable computer software relating to the handling of financial transactions, technology development and technology design in the field of crypto assets, and promotional marketing services in the field of digital assets.

16.     While Bitpanda is based in Europe, it has a global reputation, including in New York.  Bitpanda has been covered extensively in New York-based financial media intended for an American audience including Bloomberg, Coindesk, Nasdaq, and yahoo!finance.

17.     For example, in 2025, Bloomberg covered Bitpanda's record financial results for 2024, including that its operating revenue more than doubled to €393 million from the previous year.[2]  In 2020, Nasdaq reported that Bitpanda was backed by American billionaire Peter Thiel as an investor.[3]

18.     Bitpanda has also developed its reputation and brand awareness through partnerships with athletes and sports teams, including the NFL throughout Europe, world leading soccer clubs, like Bayern Munich, Arsenal football club, Paris Saint-Germain, AC Milan, the ATP Tour, a global circuit for men's professional tennis, and Alexander Zverev, current world no.3 in Tennis, as right-sleeve-partner.[4]  These partnerships are a key component of Bitpanda's global marketing campaigns, and Bitpanda has spent tens of millions on advertising and marketing over the years to develop goodwill and name recognition.  Bitpanda's advertisements, including those

---

[2]                                                                                                                    *See* https://www.bloomberglaw.com/bloomberglawnews/crypto/X43QI418000000?bna_news_filter=crypto#jcite.

[3] *See* https://www.nasdaq.com/articles/bitpanda-raises-$52m-series-a-led-by-peter-thiels-valar-ventures-2020-09-29.

[4] *See* https://www.bitpanda.com/en/partnership.

that are part of its viral "When crypto, then Bitpanda" campaign,[5] and Bitpanda's "global brand campaign" are accessible in the United States."[6]



19.    For example, while covering the 2025 US Open in New York, *Bloomberg* highlighted Bitpanda's sponsorship of the tennis player Gaël Monfils.  *Bloomberg* discussed this as an example of how crypto companies are building their brands through such prominent sport partnerships.[7]

20.    Due to Bitpanda's extensive use, global advertising, and international promotion, Bitpanda has garnered widespread recognition and a massive following on social media.  For example, as of 2025, Bitpanda has around 100,000 followers on X (formerly known as "Twitter") where it prominently uses its BITPANDA Mark.[8]

---

[5] *See* https://www.youtube.com/watch?v=PToE_fK7wtI.

[6] *See* https://www.linkedin.com/posts/bitpanda_bitpandas-new-global-brand-campaign-is-activity-7376892861834903552-E1O-.

[7] *See* https://www.bloomberg.com/news/newsletters/2025-08-21/crypto-cultural-signaling-is-on-full-display-at-us-open.

[8] Available at: https://x.com/Bitpanda_global?ref_src=twsrc%5Egoogle%7Ctwcamp%5Eserp%7Ctwgr%5Eauthor



21.     Bitpanda also prominently uses and promotes its BITPANDA Mark on other social media platforms and has 77,000 followers on LinkedIn[9], around 46,000 followers on Facebook[10], around 10,000 followers on Tik Tok, around 8,500 subscribers on YouTube[11], around 54,000 followers on its @bitpanda Instagram account[12], and around 52,000 followers on its @bitpanda_global Instagram account[13]:

---

[9] Available at: https://at.linkedin.com/company/bitpanda

[10] Available at: https://www.facebook.com/BITPANDA/

[11] Available at: https://www.youtube.com/@Bitpanda_global

[12] Available at: https://www.instagram.com/bitpanda/

[13] *See* https://www.instagram.com/bitpanda_global/?hl=en.



22.    As a result of this global marketing campaign, as well as Bitpanda's hard-earned reputation for reliability and trustworthiness, it has developed positive reputation and goodwill in the United States, especially in New York.

**BITPANDA INC. AND ITS ACCOMPLICES**

23.    Bitpanda Inc. is a new corporation that was only recently registered.  Its first detectable activity was on September 22, 2025, when it registered with FinCEN as an MSB, listing its address as 20 W 34th St., New York, NY, 10118.  Bitpanda Inc. listed its MSB activities as "Check casher (Including traveler's and money orders), Dealer in foreign exchange, Issuer of money orders, Issuer of traveler's checks, Money transmitter, Seller of money orders, Seller of prepaid access, [and] Seller of traveler's checks"—all various types of financial services.

24.     One day later, on September 23, 2025, Bitpanda Inc. registered as a Colorado corporation listing 1312 17th Street Suite 347, Denver, Colorado as its address.  Bitpanda Inc.'s Colorado registration lists "Fong Sam International Accounting Firms" ("Fong Sam") as its registered agent and "Ernest Dewey May Jr." as its incorporator.

25.     Once Bitpanda discovered the above activities, Bitpanda retained the reputable private investigation firm Polaris Corporate Risk Management, LLC ("Polaris") to investigate Bitpanda Inc.  Polaris's investigation shows that Bitpanda Inc. and its affiliates are most likely financial scammers.

26.     To begin with, Bitpanda Inc.'s registration in New York is likely fraudulent.  On October 10, 2025, a Polaris investigator conducted a site visit at the address listed in Bitpanda Inc.'s FinCEN MSB registration: 20 W 34th Street, New York, NY.  The investigator spoke with the building's head of services.  That representative conducted a search of all current tenants and found no record of Bitpanda Inc.  The representative also noted that there was no record that the entity was a previous tenant.

27.     Based on evidence from Bitpanda Inc.'s associates, this likely-false registration in New York is part of Defendants' *modus operundi* in creating a fraudulent company purporting to operate from New York.

28.     Bitpanda Inc.'s registered agent Fong Sam is also the registered agent of the company "Aurevio Capital" and operator of the "Aurevio Capital" website.  According to its website, Aurevio Capital provides investing services and partners with established firms such as Morgan Stanley and J.P. Morgan.  Aurevio Capital also claims to be "headquartered in New York, USA" and to be a "fully compliant Money Services Business (MSB) licensed[sic] under the supervision of the U.S. Department of the Treasury."



29.     Despite appearing authentic at first glance, the site features not only broken and unworkable links, but also investment advice from a group of fictitious financial advisors.  For example, depicted below is Luis Ortega Muñoz, the purported founder of Aurevio Capital.  Upon information and belief, Luis Ortega Muñoz is not a real individual.



30.    The Aurevio Capital website has all the hallmarks of a "pig-butchering" financial scam.  Referring to the practice of fattening a pig before the slaughter, this is a type of scam where the scammer gradually builds trust with the victim over time before proposing an investment opportunity, often involving crypto assets.[14]  Scammers thus build professional-looking fake websites or trading platforms designed to look and function like a legitimate offering.  But after the consumer "invests" using the platform, the scammer pockets the funds and disappears.  The Federal Trade Commission has reported that in 2024 Americans lost over $5.7 billion to investment scams, including such "pig butchering" scams utilizing fake investment websites.[15]

31.    Similarly, the Polaris investigation linked Ernest Dewey May Jr., the incorporator of Bitpanda Inc., to multiple reports of cryptocurrency and investment scams.  Mr. May Jr. is

---

[14]    *See*    https://dfpi.ca.gov/news/insights/pig-butchering-how-to-spot-and-report-the-scam/; https://consumer.ftc.gov/articles/investment-scams.

[15] *See* https://consumer.ftc.gov/consumer-alerts/2025/03/top-scams-2024.

associated with over 40 business registrations with names indicative of financial services, such as "World Investment Academy Inc." and "Wealth Win-Win Fundo Co."

32.     Consumer protection sites have identified at least three companies registered by Ernest Dewey May Jr.—Almcoin Tech Corp., Grokr Exchange Ltd., and Yepbit Co. Ltd—as financial scams.

33.     For example, according to a description of "Grokr Exchange" posted on the site "howtoremove.guide," Grokr Exchange is a fake website that lures in consumers by offering free cryptocurrency.[16]  A screenshot taken from the online report depicts a professional-looking facade users encounter when first accessing the Grokr Exchange Ltd. website. [17]



34.     But to withdraw their balance of cryptocurrency, the consumer is required to provide a "deposit" payment.  Once they do, the consumer is locked out, and the website

---

[16] *See* https://howtoremove.guide/grokr-exchange-crypto-scam/.

[17] The Grokr Exchange Ltd. website was most recently located at Grokrhot3.com, but the domain name rapidly changes. In addition, these sites may contain malware.

operator—here, "Bitpanda Inc.'s" incorporator Ernest Dewey May Jr.—absconds with the payment.

35.    On information and belief, "Ernest Dewey May Jr." is a fictitious entity or person that may be based in China or Singapore.  The terms of service on the website artbeek.com—another website revealed by the investigation—indicates that the website is "operated by MAY JR ERNEST DEWEY, a member of Shanghai maixingwangluokeji youxiangongsi."  Additionally, a consumer on Reddit reported on their own investigation of Mr. May Jr., in which they found that several of his businesses did not exist at their registered addresses and that several websites associated with him were registered in Singapore.  Notably, upon information and belief, many "pig-butchering" scams originate from and are associated with Chinese-based organized crime.[18]

36.    Finally, the incorporator of "Fong Sam," Anshuai Zhang, also appears to be a fictitious entity with no associated addresses before 2024 and no Social Security number.  A phone number tied to Anshuai Zhang is associated with China-based Deeptree Tech Shenzen, LLC, a registered acceptance agent with the IRS.  Emphasizing that Bitpanda Inc. and its associates are essentially anonymous and unreachable, on October 17, 2025, Bitpanda sent letters by courier service to Bitpanda Inc., at each address associated with Bitpanda Inc. or Fong Sam (for Bitpanda Inc. 20 W 34th St. New York, NY 10118; 390 NE 191st St, Ste 8315, Miami, FL 33179, and 1312 17th Street Suite 347 Denver, CO 80202, and for Fong Sam 1500 N. Grant St, Ste R, Denver, CO 80203).  These letters informed Bitpanda Inc. that its use of the Bitpanda Mark violates Bitpanda's intellectual property rights, and requested a response by October 22, 2025.  Bitpanda has received

---

[18] *See* https://www.wired.com/story/pig-butchering-scam-invasion/.

no response, and indeed, the letters to the 20 W 34th St. New York, NY 10118 and 1312 17th Street Suite 347 Denver, CO 80202 addresses were returned as undeliverable.[19]

37.     In short, although Bitpanda Inc. has been attempting to conceal its illicit activities and its associates are likely operating using fictitious names and addresses, they appear to be engaged in investing scams.

## INJURY TO THE PUBLIC AND TO BITPANDA

38.     The use by Defendants of the name and mark identical to the BITPANDA Mark is highly likely to injure both Bitpanda and the public.

39.     Defendants have brazenly copied Bitpanda's exact name without permission, and without any lawful basis.

40.     Because Defendants are using Bitpanda's exact name, they are highly likely to cause consumer confusion regarding whether "Bitpanda Inc." is affiliated with, sponsored by, or actually is Bitpanda.  This is particularly true because Defendants purport to be operating in the financial services industry, the same industry as Bitpanda.

41.     Upon information and belief, Defendants copied Bitpanda's name for the purpose of impersonating Bitpanda to deceive consumers.

42.     Bitpanda is a platform that allows consumers to trade crypto assets.  The type of scam run by Bitpanda Inc.'s associates appears to be based on luring consumers into investing, utilizing websites that purport to offer financial advice or crypto trading. Those scammers are likely using the infringing Bitpanda name and mark—including as registered with FinCEN—to lend their communications and websites an aura of legitimacy. This would be particularly

---

[19] Bitpanda also sent copies of this letter to FinCEN and the Colorado Secretary of State to alert them to Bitpanda Inc.'s activities.

dangerous to consumers because BITPANDA is a household name in financial services related to crypto assets, associated by millions with safety and reliability.

43.     Defendants' registration of the "Bitpanda Inc." name with the MSB shows they are already using Bitpanda's trade name in commerce within New York for the purpose of advancing their scheme.  FinCEN has published guidance to consumers explaining that scammers often register with MSB as a means of lending legitimacy to their scams.  As FinCEN explains, scammers operating pig-butchering schemes often direct victims to send funds to MSBs, using their real MSB registration to provide cover.[20]  This is how the "Aurevio Capital" site, sponsored by Bitpanda Inc's registered agent Sam Fong, appears to have operated.  This registration therefore serves as an advertisement for Defendants' fake investment services.

44.     Defendants' threatened harm to consumers will also harm Bitpanda.  Defendants are creating the risk that consumers will come to associate the BITPANDA Mark with financial scams.  This would irreparably harm Bitpanda, Bitpanda's reputation, and its hard-earned goodwill in the BITPANDA brand.

45.     As noted above, though Bitpanda primarily serves the European market, it has developed a significant reputation and goodwill in New York, which Defendants' activities threaten.  In particular, because New York is a major center of financial services—including with many leading financial media outlets located here—any damage to Bitpanda's reputation, goodwill, and brand in New York will likely reverberate to negatively affect Bitpanda around the world.

46.     Bitpanda's business depends on consumer trust.  The harm to its reputation and goodwill in the United States threaten its brand and goodwill both in New York and elsewhere.

---

[20] *See* https://www.fincen.gov/system/files/2024-12/Alert-FinCEN-Scams-FINAL508.pdf.

## FIRST CLAIM FOR RELIEF
### False Designation of Origin and Unfair Competition
### <u>Under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)</u>

47.     Bitpanda repeats and re-alleges each and every allegation set forth in Paragraphs 1-47 of this Complaint.

48.     The BITPANDA Mark is and has been distinctive since before Defendants' first use of the "Bitpanda Inc." name based on, among other things, its inherent distinctiveness and extensive recognition and goodwill including in New York.

49.     Upon information and belief, Defendants have copied the well-known and distinctive BITPANDA Mark for the purpose of confusing consumers into believing they are Bitpanda or are associated with Bitpanda.  Defendants' use of the unauthorized Bitpanda name and mark is likely to cause confusion, mistake, or deception as to Defendants' origin, sponsorship, or connection of its company and/or services with Bitpanda.

50.     Defendants' actions thus constitute false designation of origin and unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

## SECOND CLAIM FOR RELIEF
### Trade Dress Infringement and Unfair Competition
### <u>Under New York Common Law</u>

51.     Bitpanda repeats and re-alleges each and every allegation set forth in Paragraphs 1-51 of this Complaint.

52.     Defendants' actions, as described above, are likely to cause confusion, mistake, or deception as to Defendants' origin, sponsorship, or connection of its company and/or services with Bitpanda, thereby allowing them to unfairly take advantage of the BITPANDA Mark, name, and goodwill.

53.    In doing so, Defendants acted in bad faith to exploit Bitpanda's reputation as a safe and reliable trading platform.  Defendants' actions are likely to harm the reputation and goodwill that Bitpanda has developed within the state of New York.

54.    Defendants' actions thus constitute unfair competition under New York common law.

### THIRD CLAIM FOR RELIEF
### Misuse of Name with Intent to Deceive
### Under New York General Business Law § 133

55.    Bitpanda repeats and re-alleges each and every allegation set forth in Paragraphs 1-55 of this Complaint.

56.    Defendants are using the unauthorized Bitpanda name and mark in bad faith to deceive members of the public, with the purpose of luring them into financial scams and confusing them about the source of their services and purported association with Bitpanda.  On information and belief, these members of the public likely include New York consumers, based on Defendants' choice to name New York as their place of business and New York's status as a major financial center.

57.    Defendants' actions thus constitute misuse of name with an intent to deceive under New York General Business Law § 133.

### JURY DEMAND

Pursuant to Fed. R. Civ. P. 38, Bitpanda respectfully demands a trial by jury on all issues properly triable by a jury in this action.

### PRAYER FOR RELIEF

WHEREFORE, Bitpanda respectfully requests that this Court enter judgment in its favor on each and every claim for relief set forth above and award it relief, including but not limited to the following:

A.   An Order declaring that Defendants' use of the BITPANDA name and mark constitutes false designation of origin, unfair competition, and misuse of name under federal and state law, as detailed above;

B.   A permanent injunction enjoining Defendants and their employees, agents, partners, officers, directors, owners, shareholders, principals, subsidiaries, related companies, affiliates, distributors, dealers, and all persons in active concert or participation with any of them, from:

(1)   Operating any business, entity, website, or social media account that purports to originate from Bitpanda or to be sponsored or licensed by, or affiliated with Bitpanda, or that comprises of or contains the trademark or designation BITPANDA or any variation that is confusingly similar with or likely to dilute the BITPANDA name or mark;

(2)   Registering or using any trademark, trade name, business name, domain name, or another designation comprised of or containing BITPANDA or any variation that is confusingly similar to the BITPANDA name or mark;

(3)   Maintaining any registrations with any authorities that use names comprised of or containing BITPANDA or any confusingly similar variations, including but not limited to registrations with the Financial Crimes Enforcement Network and Colorado Secretary of State.

(4)   Using in connection with Defendants' services, goods, or any other activities, any false or deceptive designations, representations, or descriptions likely to deceive consumers into believing that Defendants or their products or services emanate from or are licensed, approved, or sponsored by Bitpanda;

(5)     Selling, passing off, inducing, or enabling others to sell or pass off any services as Bitpanda's services, or as offered or approved by Bitpanda;

(6)     Affixing, applying, annexing, or using in connection with the sale of any services or products, a false description or representation including words or other symbols tending to falsely describe or represent such products or services as Bitpanda's products or services and from offering such products or services in commerce;

(7)     Destroying and/or failing to preserve any products or services, or products or services using any trademark, trade name, or designation comprised of or containing BITPANDA or any variations that are confusingly similar to the BITPANDA name or mark, or any records related to the offering, promotion, advertising, sale or distribution of any services and/or products purporting to be Bitpanda's.

(8)     Assisting, inducing, enabling, aiding, or abetting any other person or business entity engaging in or performing any of the activities referred to in subparagraphs 1-7 above.

C.  An Order directing Defendants to, within 14 days, either (1) withdraw all registrations with any state or federal government agency that contain the BITPANDA name or mark, or (2) change the name on all registrations with any state or federal government agency to one that does not contain BITPANDA or any confusingly similar variations;

D.     An Order directing Defendant, within 14 days, to cooperate with any state or federal government agency with whom Defendants have registered any trademark, trade name, business name, domain name, or another designation containing BITPANDA or any confusingly similar variations to immediately revoke that registration and remove it from public availability.

E. An Order directing Defendants, within 14 days, to notify and take all corrective measures toward any consumers or third parties to whom they have offered, advertised, or sold their services, or with whom they have interacted in connection with the BITPANDA Mark.

F. An Order directing Defendants, within 21 days, to file with this Court and serve on Bitpanda's attorneys a report in writing and under oath setting forth in detail the manner and form in which Defendants have complied with the injunction;

G. An Order requiring Defendants to account for and pay to Bitpanda any and all profits arising from the foregoing acts, and increasing such profits, in accordance with 15 U.S.C. § 1117 and other applicable laws;

H. An Order requiring Defendants to pay Bitpanda damages in an amount as yet undetermined (and including prejudgment and post-judgment interest) caused by the foregoing acts, and trebling such damages in accordance with 15 U.S.C. § 1117 and other applicable laws;

I. An Order requiring Defendants to pay Bitpanda punitive damages in an amount as yet undetermined, in accordance with New York common law and other applicable laws.

J. An Order requiring Defendants to pay Bitpanda all its litigation expenses, including reasonable attorneys' fees and the costs of this action pursuant to 15 U.S.C. § 1117, and other applicable laws;

K. An Order requiring Defendants to pay Bitpanda punitive damages for unfair competition under New York common law and other applicable laws; and all other relief as the Court may deem appropriate.

Date:  October 29, 2025

Respectfully submitted,

*/s/ Tiffany Arosemena*
WHITE & CASE LLP
Tiffany Arosemena (SDNY Bar No. 5624648)
1221 Avenue of the Americas
New York, NY 10020
(212) 819 8329
tiffany.arosemena@whitecase.com

Anna Naydonov (*pro hac vice* forthcoming)
WHITE & CASE LLP
701 Thirteenth Street, NW
Washington, DC 20005
Telephone: (202) 637-6197
Fax: (202) 639-9355
anna.naydonov@whitecase.com

Nathan Swire (*pro hac vice* forthcoming)
WHITE & CASE LLP
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 819-8200
Fax: (212) 354-8113
nathan.swire@whitecase.com

*Counsel for Plaintiff Bitpanda GmbH*